Borenstein, J.
The plaintiff, Marie Pharon, brought this action to recover damages arising from the lead poisoning of her two minor daughters, Stacey and Sandy Pharon. The plaintiffs move for partial summary judgment pursuant to Mass.R.Civ.P. 56(a), on the issue of liability of the defendants, the former landlords of the Pharon family. For the reasons set forth below, Pharon’s motion is ALLOWED.
BACKGROUND
These are the facts, based on the submission of the parties, construed in the light most favorable to the defendants as the nonmoving parties. Stacey Pharon (DOB 8/30/86) and Sandy Pharon (DOB 2/8/88) are the minor daughters of Marie Pharon. In February of 1987, Marie Pharon, her husband Pierre Pharon, and their two daughters moved into an apartment at 354-56 Somerville Ave., Somerville, Massachusetts (“the Premises”), owned by defendants Adeline, Ronald, Russell and Marjorie Backer, trustees of the Samuel Backer Insurance Trust.
Stacey Pharon’s medical records indicate that on July 18, 1989, Stacey was found to have an elevated blood lead level (41 mcg/dl) and an elevated FEP level (129). Her blood lead levels remained high for nearly a year. Sandy Pharon’s medical records indicate that she was found to have an elevated blood level (36 mcg/dl) on or about November 1, 1989. Both children had to undergo a course of chelation therapy to help their bodies speed the excretion of the dangerous levels of lead in their bodies. In her deposition, Pharon testified that she found Stacey with paint chips in her mouth on several occasions prior to learning of her lead poisoning.
An inspection of the Premises by the Massachusetts Childhood Lead Poisoning Program in August of 1989 found extremely high, dangerous and illegal levels of lead in dozens of locations in every room throughout the Premises. On August 23, 1989, the defendants were ordered by the Childhood Lead Poisoning Prevention Program of the Massachusetts Department Of Public Health (“DPH”) to remedy the violation within ten days of receiving the notice.
After reviewing Stacey’s and Sandy’s medical records, the neuropshychologist’s evaluation and the lead paint inspection report, William Bithoney, M.D., a pediatrician and former Associate Chief of Pediatrics at Children’s Hospital, is of the opinion that the lead paint in the Premises was the source of Stacey’s and Sandy’s lead poisoning.
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). To defeat summary judgment, the non-moving party must articulate specific facts, establishing the existence of a genuine material fact. Pederson v. Time, Inc., 404 Mass. at 17.
The plaintiffs herein seek partial summary judgment on the issue of the defendants’ liability, as landlords, under two statutory causes of action: G.L.c. Ill, §199 and G.L.c. 186, §14. Both statutory causes of action provide for the strict liability of a landlord in a lead poisoning case.
*368 Mass. Practice §316, Nolan and Sartorio, provides that “[s]trict. . . liability is accurately denominated as liability without fault. The plaintiff need not prove any of the elements of negligence except damage and causal relation between the damage or injury and the defendant’s offending activity.”
The Lead Poisoning Prevention Act, G.L.c. Ill, §§190-99, imposes obligations on the owner of a residential premises, where a child under six years of age resides and in which any accessible material contains dangerous levels of lead, to remove such materials or make them inaccessible to children under six years of age. In Bencosme v. Kokoras, 400 Mass. 40, the Supreme Judicial Court determined that the Legislature intended the statute to impose strict liability on the owner. G.L.c 111, §199 unambiguously and specifically declares that the owner “shall be liable for all damages caused by his failure to perform the duties required of him pursuant to [the statute].” Accordingly, “a plaintiff in a lead poisoning case is not required to prove negligence nor is the owner’s duty imposed only if he knew or should have known of the risk." (Mass. Practice §321, Nolan and Sartorio.)
As set forth above, the Pharons lived in the apartment owned and managed by the defendants at the time Stacey and Sandy suffered lead poisoning. Both children were under six years of age. An inspection by the Childhood Lead Poisoning Prevention Program of DPH in 1989, determined that the Premises contained dangerous and illegal levels of lead. Providing these conditions, there is no dispute as to defendants’ obligation, as owners, under the statute, to remove any accessible material which contained dangerous levels of lead from the Premises. However, defendants failed to do so.
The defendants try to undermine plaintiffs’ claim by attacking the validity and reliability of plaintiffs’ lead inspection of the Premises. They provide this court with the required regulations in performing such inspection, but show no evidence from which a trier of fact may reasonably conclude that the plaintiffs’ inspection failed to conform with the applicable regulations. The defendants base their assertion on a rather speculative expert opinion of Anthony Tremblay which states in part that “if the inspector failed to comply with the Regulatory requirement. . . then this might compromise the precision, accuracy and reliability of the findings” (at ¶10).
Defendants further argue that “even assuming the accuracy of the findings of the Report regarding the premises, the lead-based paint identified in the apartment was not a substantial contributing source of plaintiffs’ elevated blood levels.” (Defendants’ Opposition to Plaintiffs’ Motion for Partial Summary Judgment at 13.) The defendants base this argument on another expert opinion by Dr. Rudolph J. Jeager who concludes that the substantial contributing source of plaintiffs’ lead poisoning was the lead which Mr. Anthony Tremblay found seven years later in the soil of the immediate vicinity, but not from the property itself. Defendants have provided no evidence which show that the plaintiffs were ever exposed to these sources and no evidence from which a trier of fact could reasonably conclude that the lead at the Premises was not a significant factor in causing plaintiffs’ lead poisoning.
Accordingly, this court shall grant partial summary judgment on the issue of liability in favor of plaintiffs.
The plaintiffs further allege that the defendants are strictly liable to them under the implied covenant of quiet enjoyment, G.L.c. 186, §14. G.L.c. 186, §14provides that any landlord who “directly or indirectly interferes with the quiet enjoyment of any residential premises” shall be liable for “actual or consequential damages or three month’s rent, whichever is greater...” It is not necessary to recovery that the landlord intended to violate the covenant. It is “the landlord’s conduct, and not his intentions [which] is controlling.” Blackett v. Olanoff, 371 Mass. 714, 715-16 (1977). In Simon v. Solomon, 385 Mass. 91 (1982), the Supreme Judicial Court noted that the language of the statute itself suggests that liability will be imposed “whenever the natural and probable consequence of [the] landlord’s action [is] interruption of the tenant’s rights.” Id. at 102.
The failure to remove lead based paint from the premises occupied by children under the age of six years is a per se violation of the State Sanitary Code. 105 CMR §410.750. G.L.c 111, §198 also provides that violations of G.L.c. §197 “maybe treated by any party as aviolation of the state sanitary code and all procedures and remedies applicable to such -violations of said . . . [section].” Commonwealth v. Racine, 372 Mass. 631 (1977).
A landlord’s failure to maintain residential premises in accordance with the State Sanitary Code, where the violations are serious and substantial, constitutes a substantial interference with the tenant’s right to quiet enjoyment in violation of G.L.c. 186, §14. Manzaro v. McCann, 401 Mass. 880 (1988).
Defendants failed to remove the lead-based paint from the Premises in which plaintiffs were residing with two minor children, under six years of age. As a result, Stacey and Sandy Pharon suffered lead poisoning injuries which are the “natural and probable consequence” of the defendants’ action and is an interruption of plaintiffs’ right to live in the Premises free from an accessible material containing lead. As a matter of law the defendants’ conduct constituted a substantial and serious interference with the plaintiffs’ quiet enjoyment of the premises.
ORDER
Based upon the foregoing, it is hereby ORDERED that Plaintiffs’ motion for partial summary judgment is ALLOWED.